IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL VAN BERGEN, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| FASTMORE LOGISTICS LLC and | ) |
| RAYMOND SCIUCKAS, | ) |
| | ) |
| Defendants | ) |

## COMPLAINT

Now comes the Plaintiff, PAUL VAN BERGEN ("Van Bergen" or "Plaintiff"), by his attorneys, MARK D. DE BOFSKY, DE BOFSKY SHERMAN CASCIARI REYNOLDS, P.C., ALEJANDRO CAFFARELLI, and CAFFARELLI & ASSOCIATES, LTD., and complaining against the Defendants, FASTMORE LOGISTICS LLC ("Fastmore") and RAYMOND SCIUCKAS ("Sciuckas") (collectively "Defendants"), he states as follows:

**Prelininary Allegations**

**JURISDICTION**

1. The district court has jurisdiction over the parties and over the subject matter of this dispute in accordance with the Employee Retirement Income Security Act of 1974 ("ERISA"), and, in particular, ERISA § 502(e)(1) and (f) (29 U.S.C. §§ 1132(e)(1) and (f)). Those provisions give the district court jurisdiction to hear civil actions brought seeking relief under the ERISA law (Employee Retirement Income Security Act). In addition, this Court has supplemental jurisdiction over related alternate claims pled herein under state law pursuant to 28 U.S.C. § 1367.

2. This action may also be brought before this Court pursuant to 28 U.S.C. § 1331, which provides subject matter jurisdiction over actions that arise under the laws of the United

States.

3. The ERISA statute provides, at ERISA § 503 (29 U.S.C. § 1133), a mechanism for administrative or internal appeals of adverse benefit determinations. All required pre-litigation appeals have been exhausted or are deemed exhausted prior to the filing of this Complaint.

**VENUE**

4. Venue is proper in the Northern District of Illinois pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) and 28 U.S.C. § 1391 because the Defendants are located in this District and all transactions, events and occurrences relevant to this action occurred in this District. Alternatively, venue over Plaintiff's alternatively pled state law claims is proper in this District for the same reasons as set forth above pursuant to 28 U.S.C.§ 1391.

**NATURE OF ACTION**

5. This case seeks to recover benefits due under the Fastmore Logistics LLC Equity Appreciation Plan ("Plan"), a non-qualified employee benefit plan established by Fastmore to benefit certain highly compensated employees by incentivizing them to help increase Fasmore's value and to encourage employee retention by incorporating a 5-year vesting schedule in order to achieve full value of each unit appreciation right granted to each participant in the Plan. In the alternative, Plaintiff brings related claims against Sciuckas for interference with their right to benefits, and against both Defendants for breach of fiduciary duty. In the alternative to Plaintiff's ERISA claims, Van Bergen invokes the Court's supplemental jurisdiction to enforce Plaintiff's right to compensation earned in accordance with the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 et seq. ("IWPCA"), for the Defendants' failure to pay Van Bergen his wages per the agreement between the Parties. As to the ERISA claims pled herein, this action is brought pursuant to ERISA §§ 502(a)(1)(A), 502(a)(1)(B) and 502(a)3) (29 U.S.C. §§ 1132(a)(1)(A), 1132(a)(1)(B) and 1132(a)(3)),

and also seeks prejudgment interest, as well as attorneys' fees and costs pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)) or, alternatively, for damages and attorneys' fees under the IWPCA.

## THE PARTIES

6.     Plaintiff, Paul Van Bergen, is and was at all times relevant hereto, a resident of Northbrook, Illinois, which is located within the Northern District of Illinois.  On or about October 3, 2016, Van Bergen was hired by Fastmore Logistics, LLC as Vice President of Operations.  In January 2018, he was promoted to Chief Operating Officer.  At the time of his promotion, and as an inducement to accept the promotion, Van Bergen was offered and accepted participation in the Fastmore Logistics LLC Equity Appreciation Plan and was granted an award of 500 unit appreciation rights ("UAR") in the Plan on or about January 22, 2018.  Van Bergen remained employed by Fatmore until May 1, 2021, when he voluntarily resigned from his employment.

7.     At all times relevant hereto, Fastmore Logistics LLC had its principal place of business in Schaumburg, Illinois, which is located within this district.  Fastmore is in the business of logistics with respect to expedited transportation of freight from ports of entry to customers throughout North America.

8.     Raymond Sciuckas on information and belief resides within the Northern District of Illinois.  At all times relevant hereto, Sciuckas was the majority owner and President of Fastmore and became the sole owner of Fastmore on or about April 30, 2021, when he purchased the membership interest of the only other member of Fastmore Logistics, LLC, Giedrius Madelis. Sciukas is also the sole trustee and fiduciary of the Plan.

## STATEMENT OF FACTS

9.     On or about October 3, 2016, Van Bergen was hired as Vice President of Operations of Fastmore.

10. As a result of his highly successful performance in growing Fastmore's revenues by millions of dollars, Van Bergen was promoted to Chief Operating Officer on or about January 1, 2018.

11. In addition to and as an inducement for him to accept his promotion and agree to continued long-term employment, in January 2018, Van Bergen was offered 500 Unit Appreciation Rights ("UAR") in Fastmore under the Fastmore Logistics, LLC Equity Appreciation Plan ("Plan"). A copy of the Plan is attached hereto and by that reference incorporated herein as Exhibit "A." In addition, the UARs awarded to Plaintiff and a corrected UAR award are attached hereto and incorporated herein as Exhibits "B" and "C." The correction clarified that each UAR had a base value of $2,600.00

12. The Plan (copy attached as Exhibit "A") was designed "to promote the interests of the Company [Fastmore] and certain of its key executive employees by more closely aligning the interests of such employees with the interests of the Company's unitholders." Further, the Plan stated: "The Plan is designed to allow Participants to share in the increase in the value of the Company through the award of United Appreciation Rights. Through the receipt of such awards, Participants will have greater incentive to attain corporate objectives and remain employed by the Company." Plan at 1.

13. The Plan defined a "Unit" as "a common unit of the Company." The Plan further defined a "Unit Appreciation Right" and "UAR" to mean "the right to receive compensation from the Company based on the growth of the value of the Company, as determined and paid in accordance with the terms of the Plan." Plan at 2.

14. The Plan further provided: "The Redemption Price to be paid to a Participant in exchange for the redemption of a Unit Appreciation Right shall equal the increase in value of a

4

Unit over the Award Base Value from the date of the Award until the date of the most recent valuation of Company Units …. Such value shall be determined by the reasonable application of a reasonable valuation method as determined in the Manager's* sole discretion." Plan at 3.

15. Each UAR vested at a rate of 20% for each year following the date of a UAR award. Plan at 3. Upon the resignation of an employee (or a termination of employment without cause), the vested UARs of a Participant are required to be redeemed "in substantially equal monthly installments over a twenty-four-month period following the Participant's employment termination." Plan at 4.

16. On information and belief, at all relevant times there were 10,000 Units of Fastmore issued and outstanding.

17. In conjunction with his promotion and the grant of appreciation rights; and as a condition of and consideration for that grant, Van Bergen was required to sign a new employment agreement which contained a provision titled "Non-Competition/Non-Solicitation" that precluded Van Bergen from soliciting "any client, customer and/or vendor of Company on behalf of any organization" for a 24 month period (a copy of the Employment Agreement ("Employment Agreement") is attached hereto and by that reference incorporated herein as Exhibit "D."). The Non-Competition/Non-Solicitation provision further stated:

> In consideration of, and as compensation for, Employee executing this Agreement and for agreeing to abide by the restrictive covenants herein, Company shall provide Employee (i) the opportunity to participate in the Fastmore Logistics LLC Equity Appreciation Plan, and (ii) an amount equal to One Thousand Dollars ($1,000.00) contemporaneously with the execution of this Agreement. The opportunity to participate in the Fastmore Logistics LLC Equity Appreciation Plan and the payment descried herein shall be deemed consideration for entering into this Agreement and shall be separate and distinct from the compensation due to Employee for the performance of Employee's job duties.

---

* The Plan defines "Manager" as the "Manager" as stated in Section 1.11 of the Limited Liability Company Operating Agreement of the Company. Plan at 2. At all times relevant hereto, Sciukas was the manager and sole fiduciary of the Plan.

5

Employment Agreement at 4-5.

18. After receiving the UAR grant in 2018, Van Bergen put forth his best efforts on behalf of Fastmore; and as a result of those efforts, the company's value grew based on profits and revenues that substantially increased each year throughout the remainder of his employment.

19. As a result thereof, the valuation of each UAR substantially increased as the valuation of Fastmore increased.

20. Subsequent to Plaintiff becoming a participant in the Plan, at least one other Fastmore employee became a Plan participant. An additional participant was added on or about February 1, 2021; and on information and belief, that participant's UARs were valued at $4,308 per unit.

21. There has been no downtown or decline in Fastmore's business in 2021; and it remains a highly profitable ongoing business.

22. At the time of Plaintiff's resignation from Fastmore, he attempted to redeem his UARs in accordance with the provisions in the Plan specifying he was entitled to a mandatory redemption of his UARs as the time of his resignation.

23. Despite the promises made to the Plaintiff and the significant increases in Fastmore's revenues and profits since Plaintiff became a participant in the Plan that were due in no small measure to Plaintiff's work and effort on behalf of Fastmore, Scuikas, acting individually and as the Plan fiduciary, denied Plaintiff's request based on a false assertion that the unit value for each UAR had declined between January 2018 and May 2021 and that no monies were therefore due and owing since a redemption was dependent on a UAR valuation higher than $2,600 per UAR unit.

## **COUNT I – CLAIM FOR BENEFITS DUE**

1.-23.   Plaintiff realleges paragraphs 1-23 of the allegations set forth above as paragraphs 1-23 of Count I; and by that reference, incorporates those allegations herein.

24.   Following the denial of his claim for redemption of his UARs, Van Bergen attempted to appeal the denial in accordance with 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1. However, Plaintiff's rights to a full and fair review were violated and Defendants engaged in procedural unreasonableness in one or more the following respects:

  A.   Plaintiff was denied access to relevant documents and records he requested pursuant to 29 C.F.R. § 2560.503-(h)(2)(iii) consistent with the relevancy definition contained in 29 C.F.R. § 2560.503-1(m)(8).  The requested documents were relevant and necessary in order for Plaintiff to establish the valuation of his UARs in accordance with generally accepted accounting principles and other generally accepted principles of finance and valuation; and to establish Defendants' determination was made in compliance with administrative processes and safeguards and would show the benefit determination was made in accordance with plan documents and applied consistently;

  B.   Plaintiff was not provided with a review that took into account all comments, documents, records and information submitted by the Plaintiff as required by 29 C.F.R. § 2560.503-1(h)(2)(iv).

25.   As a result of Defendants' procedural unreasonableness, no deference is to be afforded its determination; and under *de novo* review, Plaintiff is entitled to conduct discovery necessary to ascertain the valuation of his UARs which was withheld during the course of the claim and claim appeal.

26.   Any and all required pre-litigation claim appeals have now been exhausted and this

7

matter is ripe for judicial intervention.

27. The foregoing allegations establish that Defendants' grounds for refusing to redeem Plaintiff's UARs were based on false statements that are inconsistent with ascertainable measures of valuation of Plaintiff's UARs that would show a significant increase in the valuation of each UAR well in excess of $2,600.

28. Defendants further compounded their wrongful refusal to pay Van Bergen the monies he is owed and demonstrated their bad faith and bias or prejudice against Plaintiff by offering him a compromise settlement that was a fraction of what he was owed and grossly inconsistent with what Fastmore owed Van Bergen to redeem his shares.

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in favor of the Plaintiff and against the Defendants in an amount that values Plaintiff's UARs at no less than $4,308 per UAR;

B. That the Court award Plaintiff prejudgment interest on all payments that have accrued since Plaintiff's UARs were required to have been redeemed;

C. That Plaintiff be awarded his attorneys' fees and his costs of suit pursuant to 29 U.S.C. § 1132(g); and

D. That Plaintiff receive any and all other relief to which he is entitled.

## COUNT II- BREACH OF FIDUCIARY DUTY

In the alternative to Count I, Plaintiff states:

1.-28. Plaintiff realleges paragraphs 1-28 of Count I as paragraphs 1-28 of Count II, and by that reference, incorporates those allegations herein.

29. At all times relevant hereto, the Plan and its fiduciary, Sciuckas, owed Van Bergen the duties and obligations specified in 29 U.S.C. § 1104(a)(1). Among those duties is an obligation

8

to act "solely in the interests of participants" and "for the exclusive purpose of providing benefits to participants."

30. Inherent in the Plan is a structural conflict of interest since the Plan and its fiduciary both fund the benefit payments out of corporate assets since it is an unfunded plan, and because the Plan fiduciary determines eligibility to receive benefits. The conflict is heightened further in this matter because any benefits paid to Van Bergen under the terms of the Plan results in a dollar for dollar reduction of Fastmore's earnings that would otherwise inure to Sciuckas as the sole member of Fastmore's limited liability corporation.

31. Defendants' refusal to redeem Plaintiff's UARs for fair market value was the direct result of Fastmore and Sciuckas's conflicts of interest and actions that were inconsistent with the fiduciary obligations required under the ERISA statute in one or more of the following respects:

   a) Defendants misrepresented the value of Fastmore to Van Bergen in order to deny him benefits under the Plan;

   b) Defendants denied Plaintiff a full and fair review of his claim when he appealed the denial of benefits;

   c) Sciuckas attempted to settle Van Bergen's claims for an amount he knew to be far less than what he knew to be the value of the UARs issued to Plaintiff;

   d) Sciuckas acted solely out of self-interest and contrary to the fiduciary duties he owed to Plaintiff as a Plan fiduciary.

32. As a direct and proximate result of the foregoing, Plaintiff was denied redemption of his UARs at the proper valuation and was denied Plan benefits altogether.

33. The only way in which this matter may be resolved is for the court to order the following equitable relief – removal of the existing plan fiduciary and replacement of Sciuckas

with an independent fiduciary and an accounting to determine the valuation of Plaintiff's UARs.

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court remove Raymond Sciuckas as a fiduciary of the Plan and that he be replaced with an independent fiduciary;

B. That the Court order the Plan to perform an accounting to determine the fair market value of Plaintiff's UARs;

C. That Plaintiff be awarded the amount the accounting shows he is due under the Plan, including interest accrued since the date redemption was to have occurred;

D. That Plaintiff be awarded attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g); and

E. That Plaintiff recover any and all other relief to which he may be entitled.

## COUNT III – INTERFERENCE – 29 U.S.C. § 1140

For Count III of his Complaint, which is also pled in the alternative to Count I, Plaintiff states:

1.-33. Plaintiff realleges paragraphs 1-33 of Count II as paragraphs 1-33 of Count III, and by that reference incorporates those allegations herein.

34. Section 510 of ERISA (29 U.S.C. § 1140) makes it unlawful to interfere with an employee's right to receive benefits that are due under the terms of a plan.

35. Notwithstanding the foregoing legal requirement, Sciuckas used his role as the plan fiduciary to interfere with and wrongfully deny Plaintiff benefits that he was entitled to receive under the Plan.

36. As a direct and proximate result of Sciuckas's interference, instead of Van Bergen's UARs being valued at at least $4,308 per unit, benefits were denied based on Sciukas's false

representation that the UARs had declined in value since Van Bergen became a Plan participant in 2018; and Plaintiff was damaged as a result.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendants and that he recover the full value of his UARs at redemption, plus interest, as a surcharge remedy under ERISA; and that Plaintiff be awarded fees, costs, and any and all other relief to which he may be entitled.

## **COUNT IV – ILLINOIS WAGE PAYMENT AND COLLECTION ACT**

For Count IV of his Complaint, which is also pled in the alternative to Counts I-III, Plaintiff states:

1.-23. Plaintiff realleges paragraphs 1-23 of the Preliminary Allegations as paragraphs 1-23 of Count IV, and by that reference incorporates those allegations herein.

24. Bonus incentive payments such as UARs constitute "wages" under the IWPCA. 820 Ill. Comp. Stat. § 115/2.

25. The IWPCA requires that employers shall pay employees all wages earned, and all final compensation of separated employees, in full. 820 Ill. Comp. Stat. §§ 115/3, 115/5.

26. Defendants' failure to pay Van Bergen the actual value of his UARs, in an amount equal to or greater than $4,308 per Unit, has proximately caused Van Bergen to suffer actual damages, including, but not limited to, severe economic harm and loss of income.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Awarding judgment against each of the Defendants jointly and severally by ordering payment to Van Bergen in the amount promised to him, and owed to him, due to the Defendants' violations of the IWPCA;

B. Awarding prejudgment interest in accordance with 815 Ill. Comp. Stat. 205/2;

C. Awarding all unpaid wages and statutory damages pursuant to the formula set forth in 820 Ill. Comp. Stat. 115/14(a);

11

    D.    Awarding reasonable attorneys' fees and costs incurred in filing this action as set forth in 820 Ill. Comp. Stat. 115/14(a); and

    E.    Such other and further relief as may be determined to be just, equitable, or proper by the Court.

Dated: October 29, 2021                                     Respectfully submitted,

                                                                                 /s/ Mark D. DeBofsky
                                                                                 Mark D. DeBofsky
                                                                                  One of the Attorneys for Plaintiff
                                                                                  Paul Van Bergen

Mark D. DeBofsky
DeBofsky Sherman Casciari Reynolds, P.C.
150 N. Wacker Dr., Suite 1925
Chicago, Illinois 60606
Voice: (312) 561-4040
Fax: (312) 929-0309
Email: mdebofsky@debofsky.com

Alejandro Caffarelli
Caffarelli & Associates Ltd.
224 S. Michigan Ave. Ste. 300
Chicago, Illinois 60604
Voice: (312) 763-6880
Email: acaffarelli@caffareli.com