IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL VAN BERGEN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 21 C 5796 |
| FASTMORE LOGISTICS, LLC and RAYMOND SCIUCKAS, | ) Judge Joan H. Lefkow |
| Defendants. | ) |

**OPINION AND ORDER**

Paul Van Bergen brought this action against Fastmore Logistics, LLC, his former employer, and Raymond Sciuckas, Fastmore's owner and president, to recover cash benefits allegedly owed under Fastmore's Equity Appreciation Plan. (Dkt. 2.)[1] Fastmore and Sciuckas moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 13.) The motion is granted in part and denied in part.

**BACKGROUND**[2]

Van Bergen began working as Fastmore's Vice President of Operations in 2016. (Dkt. 2 at 3.) He was promoted to Chief Operating Officer in 2018. (*Id*.) With his promotion to COO, Van Bergen was invited to become a participant in Fastmore's Equity Appreciation Plan, which is reserved for "key executive employees." (*Id.* at 4; Dkt. 2-1 at 1.)

The Plan is unfunded and participants in it are promised future cash benefits through the award of Unit Appreciation Rights (UARs). (Dkt. 2 at 4, 9.) The Plan defines a "unit" as a

---

[1] As explained in more detail below, jurisdiction over the ERISA claims rests under 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b)(2).

[2] The following facts come from the complaint. *See infra* Legal Standard.

1

"common unit of the company" and a UAR as the right to receive compensation from the Company based on the growth of its value. (*Id.* at 4; dkt. 2-1 at 2.) When a UAR is awarded, each unit has an initial base value proportional to the overall value of the company, as "determined by the Manager in the Manager's sole discretion" rather than by the market value. (Dkt. 2-1 at 3.) Units vest under a 5-year schedule at 20% per year so long as the participant remains an employee, such that an employee's units are 100% vested after 5 years. (*Id.* at 4-5.) If the company grows and value increases, so too does the value of a participant's units. (Dkt. 2 at 4-5.)

If a participant voluntarily resigns from Fastmore, Fastmore "shall redeem the [UARs] of the Participant that are vested in accordance with the vesting schedule," and "shall pay the Redemption Price to the Participant … in substantially equal monthly installments over a twenty-fourmonth period." (Dkt. 2-1 at 4.) The redemption price is "determined by the reasonable application of a reasonable valuation method as determined in the Manager's sole discretion." (*Id.*) The redemption price per unit equals the increase in value of a unit over its initial base value. (*Id.* at 4.)

The Manager's valuation judgments are "final, binding, and conclusive." (*Id.* at 5). The Manager and lone fiduciary of the Plan is Raymond Sciuckas, who is the President and owner of Fastmore. (Dkt. 2 at 3, 5; dkt. 2-1 at 7.)

When Van Bergen joined the Plan in January 2018, he was awarded 500 UARs at a base value of $2,600 per unit. (Dkt. 2 at 4.) For the duration of his time as a Plan participant, Fastmore's revenues and profits increased annually. (*Id.* at 6.) In February 2021, an unnamed Fastmore employee joined the Plan and his UARs were valued at $4,308 per unit. (*Id.*)

Three months later, on May 1, 2021, Van Bergen resigned from Fastmore. He sought to redeem his UARs in accordance with the Plan, but Sciuckas claimed that the unit value had declined from its initial base value ($2,600) and so there was no redemption value. (*Id.* at 6.) Van Bergen sought review of his denial of benefits but claims that the value determination remained unchanged because defendants engaged in procedural unreasonableness.

Van Bergen believes that the value of his UARs at the time of his resignation was no less than $4,308 per unit. To recover the value of UARs that he believes he was wrongfully denied, Van Bergen brought three claims under ERISA for unpaid benefits under § 502(a)(1)(B) of ERISA, *see* 29 U.S.C. § 1132(a)(1)(B), breach of fiduciary duty under section § 409 of ERISA, *see* 29 U.S.C. § 1104(a)(1), and interference under § 510 of ERISA, *see* 29 U.S.C. § 1140; and, in the alternative, he brought a claim for unpaid wages under the Illinois Wage Payment and Collection Act (IWPCA), 820 Ill. Comp. Stat. 115/1 *et seq*.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint to state a claim on which relief may be granted. A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The issue on a motion under Rule 12(b)(6) "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole* v. *U.S. Capital*, 389 F.3d 719, 724 (7th Cir. 2004). The court accepts all well-pleaded allegations as true and takes all reasonable inferences in the plaintiff's favor. *See Rock River Health Care, LLC* v. *Eagleson*, 14 F.4th 768, 772 (7th Cir. 2021).

## ANALYSIS

The resolution of many issues in this case requires an initial determination as to whether the Plan is properly characterized as a top hat plan, unfunded excess benefit plan, or bonus program. Defendants assert that it is a top hat plan, which is subject to ERISA's enforcement provisions but not its fiduciary duty provision. Van Bergen argues that the Plan is not a top hat plan. He contends it is instead "likely" an unfunded excess benefit plan or bonus program, neither of which is subject to ERISA, meaning that he has no ERISA claims. Failure to commit to a legal theory in a complaint is not fatal, but Van Bergen's repeated suggestions that ERISA does not apply borders on waiver of those claims. Nevertheless, Van Bergen filed this action for relief under ERISA and so the court proceeds as if they are not waived.

Top hat plans and excess benefit plans are closely related. Top hat plans are maintained by an employer "primarily for the purpose of providing deferred compensation to a select group of management or highly compensated employees," and they are unfunded. *Garratt* v. *Knowles*, 245 F.3d 941, 946 n.4 (7th Cir. 2001) (citing 29 U.S.C. §§ 1051(2), 1081(3), 1101(a)). Excess benefit plans may be funded or unfunded, but they are "solely for the purpose of providing benefits for certain employees in excess of the limitation on contributions and benefits imposed by" § 415 of the Internal Revenue Code and "without regard to whether the plan is funded." *Olander* v. *Bucyrus-Erie Co.*, 187 F.3d 599, 604 (7th Cir. 1999) (citing 29 U.S.C. § 1002(36)). "[T]he decisive consideration" in distinguishing between the two plans "is whether avoiding the limitations of § 415 [of the Internal Revenue Code] 'was the sole purpose for which the employer maintained the plan.'" *Garratt*, 245 F.3d at 946 (quoting *Olander*, 187 F.3d at 605). If avoiding the limitations of § 415 is only a side effect of the plan's operation, and not its sole purpose, then it is not an excess benefit plan. *Id.* In a bonus program, the third possibility,

"payments [are] made by an employer to some or all of its employees as bonuses for work performed," and it is not subject to ERISA "unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R § 2510.3-2(c). It may not be possible to determine a plan's purpose from its plain language if that purpose is not explicit and unambiguous, necessitating discovery on the issue. *E.g.*, *Malloy* v. *Walgreen Co.*, No. 20-CV-5686, 2021 WL 3054819, *8 (N.D. Ill. Jul. 20, 2021).

Van Bergen provides little explanation to support his contention that the Plan is "likely" an unfunded excess benefit plan or bonus program. Given that the Plan states three explicit purposes, none of which is to avoid the limitations of § 415 of the Internal Revenue Code or provide retirement income to employees, the Plan can be plausibly characterized as a top hat plan. *Cf. id.* (court unable to determine proper classification of plan on its face because it did not "state[ ] *what* its purpose is").

I.   **ERISA benefits claim**

As a top hat plan, defendants contend that such an action can only be brought against the Plan, not the company or its owner. Van Bergen responds that an action can be brought against whichever entity is obligated to pay the benefits, and here that would be Fastmore and Sciuckas.

ERISA's text "makes no mention at all of which parties may be proper defendants," but it is generally "brought against the party having the obligation to pay," which is typically the plan. *Larson* v. *United Healthcare Ins.*, 723 F.3d 905, 911, 913 (7th Cir. 2013). This general rule applies equally when the plan at issue is an unfunded top hat plan. *See Garratt*, 245 F.3d at 949 (suit to recover benefits under top hat plan should be brought against only the plan). An exception, however, is where a non-plan entity is "closely intertwined" with the plan. *E.g.*, *Mein* v. *Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001) (employer proper defendant because it was

5

"closely intertwined" with the plan based on employer being plan administrator and designated agent for service of process, and most communications with plaintiff regarding benefits were on employer's stationery); *Riordan* v. *Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997) (declining to hold employer a wrong party to ERISA benefits action where "exact relationship between [the company] and the plan is not clearly set out, [t]he plan documents themselves refer to [the company] and the plan nearly interchangeably, and the company designated itself as the plan's agent for service of process"); *cf. Garratt*, 245 F.3d at 949 n.7 (ERISA action was improperly brought against the employer's board of directors and attorney because "*Mein* does not suggest that it would be proper for a plaintiff seeking benefits to substitute individual corporate members as defendants rather than the plan").

The complaint plausibly alleges the type of close link between the Plan and Fastmore that would render Fastmore and Sciuckas proper parties. The Plan, which is unfunded, does not obligate Fastmore "to segregate any monies from its general assets, to create any trust or make special deposits" in administering benefits due and it pays out benefits from the company's general coffers. Further, the Plan warns that payments might be delayed if Fastmore experiences economic hardship. Moreover, the President and sole owner of Fastmore has "final, binding, and conclusive" discretion over determining UAR valuations under the Plan. Therefore, because Fastmore and the Plan are closely intertwined, the ERISA benefits claim against Fastmore and Sciuckas survives.

## II.    ERISA breach of fiduciary duty claim

Van Bergen also brought a breach of fiduciary duty claim under § 409 of ERISA against Sciuckas. *See* 29 U.S.C. § 1104(a)(1). Under any party's characterization of the Plan — top hat, unfunded excess benefit, or bonus program — it would not be subject to ERISA's fiduciary obligations, and so neither is Sciuckas. *See* 29 U.S.C. § 1003(b)(5) (excess benefit plan); 29

6

C.F.R. § 2510.3-2(c) (bonus program); *Garratt*, 245 F.3d at 946 n.4 (top hat). The claim is dismissed with prejudice.

### III. ERISA interference claim

The third ERISA claim that Van Bergen advances is an interference claim under § 510. *See* 29 U.S.C. § 1140. "ERISA § 510 makes it unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant in an employee benefits plan for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." *Teamsters Loc. Union No. 705* v. *Burlington N. Santa Fe, LLC*, 741 F.3d 819, 826 (7th Cir. 2014) (cleaned up). "The primary focus of § 510 is to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights," *Meredith* v. *Navistar Int'l Corp.*, 935 F.2d 124, 127 (7th Cir. 1991), and interference claims have been understood to require "interference … to the employment relationship which *gives rise* to an individual's benefit rights," *Teumer* v. *Gen. Motors Corp.*, 34 F.3d 542, 545 (7th Cir. 1994) (emphasis in original). But § 510 also "denote[s] actions that can be taken against a participant or beneficiary who is not an employee," meaning an existing employment relationship is not necessarily a prerequisite to an interference claim. *See Feinberg* v. *RM Acquisition, LLC*, 629 F.3d 671, 675 (7th Cir. 2011). An interference claim also requires a showing of specific intent to interfere with the participant's attainment of benefits. *Nauman* v. *Abbott Labs.*, 669 F.3d 854, 857 (7th Cir. 2012).

Here, the factual basis for both the benefits claim and interference claim are the same. Van Bergen alleges that he voluntarily resigned from Fastmore and was denied the true value of his UARs "based on a false assertion that the unit value for each UAR had declined." Assuming § 510 permits actions by former employees who voluntarily resigned, Van Bergen's claim still fails because he does not allege any facts that plausibly support any type of interference with his

7

employment relationship as described under § 510, let alone a specific intent to do so. The interference claim is dismissed without prejudice.

IV.     **IWPCA claim**

Finally, defendants seek dismissal of the IWPCA claim based on "complete preemption" under § 502 of ERISA. There are two ERISA preemption doctrines. Section 514(a) of ERISA, which provides "conflict" preemption, states that ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan," 29 U.S.C. § 1144(a), and it is a federal defense to state-law claims, *see Halperin* v. *Richards*, 7 F.4th 534, 540 (7th Cir. 2021). Section 502(a) of ERISA offers "complete preemption," a jurisdictional doctrine that creates federal question jurisdiction over state-law claims that could have been brought as ERISA claims, thereby allowing their removal from state court to federal court. *See* 29 U.S.C. § 1132(a); *Franciscan Skemp Healthcare, Inc.* v. *Cent. States Joint Board Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008).

This action was filed in federal court, so conflict preemption is the only doctrine that is arguably applicable and is the only doctrine that could lead to the dismissal of a state-law claim. In response to the preemption argument, Van Bergen accepts any outcome, "acknowledge[ing] th[e] possibility" that his IWPCA claim is preempted while also conceding that it "appears unlikely that ERISA applies here." His only argument seems to be that the IWPCA claim is pleaded as an alternative theory to any ERISA claims and so he should be allowed to pursue both.

Conflict preemption can be determined on a Rule 12(b)(6) motion and can lead to dismissal of a state-law claim with prejudice. Alternatively, if there is no ERISA claim at all, there is neither federal question jurisdiction nor diversity jurisdiction to sustain the IWPCA claim in federal court, which would lead to a dismissal without prejudice. Given the lack of any

8

developed argument on conflict preemption and because the court is unable to find a case squarely resolving whether, in this situation, the IWPCA is preempted under § 514(a) of ERISA, the court declines to decide the issue on this motion. But, in all events, this claim is destined for dismissal, the only question being whether it should be with or without prejudice depending on the basis on which it is dismissed. Van Bergen is granted leave to replead the interference claim, so the IWPCA claim also is dismissed without prejudice because a new pleading may provide more clarity on the relationship between the federal and state-law claims; if not, defendants may present a fully developed conflict-preemption argument for dismissal with prejudice.

## CONCLUSION AND ORDER

Defendants' motion to dismiss (dkt. 13) is granted in part and denied in part. Count I stands, and, for the reasons given herein, Count II is dismissed with prejudice, and Counts III and IV are dismissed without prejudice. Plaintiff may file an amended complaint by June 16, 2022. A status hearing is set for July 6, 2022, at 9:45 a.m.

Date: June 2, 2022

_____
U.S. District Judge Joan H. Lefkow