IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL VAN BERGEN,<br><br>        Plaintiff,<br><br>   v.<br><br>FASTMORE LOGISTICS, LLC and<br>RAYMOND SCIUCKAS,<br><br>        Defendants. | No. 21 C 5796<br><br>Jeffrey T. Gilbert<br>United States Magistrate Judge |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion to Compel Discovery [ECF No. 64]. For the reasons discussed below, Plaintiff's Motion to Compel Discovery [ECF No. 64] is granted in part and denied in part. The parties shall file a joint status report by February 5, 2024, that contains confirmed dates for the two depositions the Court is allowing to proceed with this Order.

## BACKGROUND

Plaintiff Paul Van Bergen ("Van Bergen") filed this lawsuit pursuant to Sections 502(a)(1)(B) and 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3), seeking to recover unit appreciation rights ("UAR") benefits he claims he is entitled to under the Equity Appreciation Plan (the "Plan") created by Defendant Fastmore Logistics LLC ("Fastmore") and its owner Defendant Raymond Sciuckas ("Sciuckas") (collectively "Defendants"). Van Bergen also alleges a claim for interference with his benefits pursuant to Section 510 of ERISA, 29 U.S.C. § 1140. According to Van Bergen, the

1

Plan incentivized employees to work to increase Fastmore's value because the UARs were supposed to increase in value as the value of the company increased. That, in turn, would allow employees to realize a benefit measured by the appreciation in the value of their UARs between the date those benefits were granted to them and the redemption price for their UARs when they left the company. Van Bergen became a participant in the Plan in 2018 when he received a promotion accompanied by an award of 500 UARs valued at $2,600 per unit at that time. Van Bergen's UAR benefits vested at a rate of 20% per year.

Van Bergen resigned from Fastmore on May 1, 2021, when his UAR benefits were 60% vested. He attempted to redeem 300 UARs upon his resignation. Sciuckas, who was the sole member/shareholder of Fastmore at the time and the sole manager of the Plan, however, advised Van Bergen that his UARs had not appreciated in value since the date they were issued, and therefore, he was not entitled to any payment for them in connection with Van Bergen's requested redemption of 300 UARs.

In their Opposition to Motion to Compel [ECF Nos. 73, 76], Defendants explain that when determining the "Redemption Price" of the UARs under section 4(b) of the Plan, Sciuckas, as manager of the Plan, determined in his discretion that a reasonable method for valuing the company's units would be to use the unit price from a recent sale of the company's units/stock. [ECF Nos. 73, 76], at 3-4. Specifically, the day before Van Bergen resigned on May 1, 2021, one of Fastmore's two members/shareholders, Giedrius Madelis, agreed to sell his shares or interests in the company for $2,000 per unit. *Id.* at 4. Sciuckas chose to set the Redemption Price (as

2

defined in the Plan) for Van Bergen's UARs at the same price Fastmore paid Madelis for his ownership interest. The $2,000 per unit price used in the Madelis transaction was $600 less per unit than the $2,600 per unit valuation of Van Bergen's UARs when they were issued which resulted in Van Bergen receiving no monetary value for them upon redemption. Van Bergen disagreed with Sciuckas's assessment and maintained that Fastmore's value had grown substantially since 2018 when his UARs were awarded. Van Bergen appealed the decision denying his claim, and as manager of the Plan, Sciuckas denied his appeal. Van Bergen then filed this lawsuit.

Van Bergen argues, among other things, that Sciuckas arbitrarily manipulated the UAR valuation to deprive him of any financial benefit upon redemption of his UARs. Van Bergen relies primarily on three pieces of evidence to support his contentions: (1) an undated "valuation" of Fastmore performed by Republic Partners that valued the company between $33 and 38 million;[1] (2) the valuation and redemption of Giedrius Madelis's 40% interest in Fastmore in April 2021, one day before Van Bergen resigned, at $2,000 per unit/share; and (3) a UAR award granted to Zac Socha, another Fastmore employee, on January 15, 2021 in which he received 100 UARs valued at $4,308 per UAR (which was $1,708 more per UAR than Van

---

[1] Plaintiff contends the Republic "valuation" was done in April 2021. Memorandum in Support of Plaintiff's Motion to Compel [ECF Nos. 67, 68], at 2. But Defendants correctly note in their opposition brief that the eight-page slide deck that Van Bergen describes as the Republic "valuation" [ECF No. 68-4] is undated. Defendants' Opposition to Motion to Compel [ECF Nos. 73, 76], at 10.

3

Bergen's UAR redemption valuation on May 1, 2021).[2] Memorandum in Support of Plaintiff's Motion to Compel [ECF Nos. 67, 68], at 3.

Van Bergen also argues that he is entitled to discover the details of Sciuckas's sale of Fastmore in November 2022, more than a year after Van Bergen sought to redeem his UARs, as potentially relevant to a reasonable valuation of his UARs when he sought to redeem them in May 2021 though he apparently does not know (and in any case does not say) what Sciuckas received in that sale transaction. In this Motion, Van Bergen seeks discovery on all these matters, arguing the facts are relevant to whether Sciuckas applied "a reasonable valuation method" as required by the Plan when he determined the Redemption Price for Van Bergen's UARs was less than the value ascribed to his UARs when they were awarded, which in effect reduced Van Bergen's redemption value for his UARs to zero.

## ANALYSIS

Van Bergen's claims are governed by ERISA, 29 U.S.C. § 1001, *et seq.,* which was "enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 829, (2003) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113 (1989)). The statute permits a person who is denied

---

[2] In his Motion, Van Bergen notes that Socha's initial UAR $4,308 award base value was reduced to $1,900 on June 4, 2021, the month after Van Bergen was offered $2,000 to redeem his own UAR award. Van Bergen argues this "raises a strong suspicion of self-dealing that needs to be investigated." Memorandum in Support of Plaintiff's Motion to Compel [ECF Nos. 67, 68], at 8. Defendants say that by reducing the UAR award value for Socha, Sciuckas increased the possibility that Socha would realize a monetary benefit upon redemption of his UARs. While that may be true, as discussed below, that may not mean the Socha UAR valuations are irrelevant in the context of this case.

benefits under an ERISA employee benefit plan to challenge that denial in federal court. *Metropolitan Life Ins. Co. v, Glenn,* 554 U.S. 106, 108, 128 S. Ct. 2343, 2346 (2008); *see also* 29 U.S.C. § 1132(a)(1)(B). "When reviewing a plan administrator's decision in the ERISA context, the district court has significant discretion to allow or disallow discovery requests." *Semien v. Life Ins. Co. of N. Am.,* 436 F.3d 805, 814 (7th Cir. 2006).

Generally, the standard of review of a plan administrator's decision regarding benefits "depends on whether the Plan Administrator was given the discretion to make those decisions." *Vallone v. CNA Fin. Corp.,* 375 F.3d 623, 629 (7th Cir. 2004). The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S. Ct. 947, 956 (1989). If the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, then the court's review is more deferential. *Id.* In cases with a deferential standard of review, the Seventh Circuit has articulated a reluctance to allow extensive discovery:

> [W]hen there can be no doubt that the application was given a genuine evaluation, judicial review is limited to the evidence that was submitted in support of the application for benefits, and the mental processes of the plan's administrator are not legitimate grounds of inquiry any more than they would be if the decisionmaker were an administrative agency.

*Perlman v, Swiss Bank Corp. Comprehensive Disability Protection Plan,* 195 F.3d 975, 982 (7th Cir. 1999). In *Semien,* however, the Seventh Circuit reasoned that, on

5

occasion, limited discovery beyond the administrative record is "appropriate to ensure that plan administrators have not acted arbitrarily and that conflicts of interest have not contributed to an unjustifiable denial of benefits." 436 F.3d at 814. The Seventh Circuit said a plaintiff must make a satisfactory threshold showing establishing two factors before such limited discovery becomes appropriate in an ERISA case. First, a plaintiff must identify "a specific conflict of interest or instance of misconduct," and second, make "a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination." *Id.* at 815.

Seventh Circuit law limiting discovery in ERISA cases in this manner, however, which has been considered established law in this Circuit for some time, has come into question since the Supreme Court's decision in *Glenn*, which found that a structural conflict of interest exists when a plan administrator "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." 554 U.S. at 108, 128 S. Ct. at 2346. In *Glenn*, the Supreme Court reaffirmed that a deferential standard of review is appropriate when the plan administrator is granted discretionary authority to determine eligibility for benefits, but also noted that if the plan administrator "is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" 554 U.S. a 111, 128 S. Ct. at 2358 (quoting *Firestone Tire,* 489 U.S. at 115). The Supreme Court explained that "any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking

6

factor's inherent or case-specific importance." *Id.* at 117, 128 S. Ct. at 2351. Under the facts in *Glenn,* the Supreme Court explained:

> the conflict of interest at issue here … should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision making irrespective of whom the inaccuracy benefits.

*Id.* Although *Glenn* does not discuss the standard for discovery in such cases, the Supreme Court cautioned against the creation of "special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." *Id.* at 116, 128 S. Ct. at 2351.

The administrative record already has been produced in this case. Defendants also have provided Van Bergen with additional information outside the administrative record that he requested. With this Motion, Van Bergen seeks additional discovery outside of the administrative record into the alleged conflict of interest that Van Bergen says Sciuckas has as both the manager of the Plan (and therefore the decision-maker as to the value of Van Bergen's UARs) and the sole member/shareholder of Fastmore who benefited financially from denying Van Bergen any redemption value in his UARs. Van Bergen argues that Sciuckas's dual role gives rise to a structural conflict of interest and raises a question as to whether Sciuckas applied "a reasonable valuation method" as required by the Plan. Defendants

7

disagree with Van Bergen and argue he is not entitled to any additional discovery because the Plan gives discretionary authority to Sciuckas to determine the UAR valuation, thus triggering ERISA's deferential arbitrary and capricious standard of judicial review. Defendants say Van Bergen does not meet the Seventh Circuit's threshold for discovery in ERISA cases given his high burden under the applicable legal standard.

District courts in the Seventh Circuit have come to different conclusions regarding whether conflict discovery is permissible in the wake of *Glenn*, and the Seventh Circuit has not yet squarely addressed the issue. *See e.g., Baxter v, Sun Life Assur. Co. of Canada*, 713 F. Supp. 2d 766 (N.D. Ill. 2010) (granting a motion to compel limited discovery and holding that "the parties must be allowed to explore, in at least a limited fashion, whether the conflict actually motivated the plan administrator's decision"); *Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, 264 F.R.D. 394, 399-400 (N.D. Ill.2009), vacated on other grounds, 2009 WL 4730963 (N.D. Ill. Dec. 8, 2009) (granting a motion to compel and applying the two-part *Semien* test); *Marszalek v. Marszalek & Marszalek Plan,* 2008 WL 4006765, at *2 (N.D. Ill. Aug. 26, 2008) (denying a motion to compel discovery and holding that *Glenn* did not overrule *Semien* and applying the two-part test for discovery).[3] This

---

[3] Courts in the Southern District of Indiana have almost unanimously concluded that *Glenn* abrogated the requirement in *Semien* that a claimant make an exceptional showing before obtaining discovery. See *Barker v. Life Ins. Co. of N. Am.,* 265 F.R.D. 389, 394 (S.D. Ind.2009) (citing cases). In *Gessling v. Group Long Term Disability Plan for Employees of Sprint/United Management Co.,* the court found that prior cases such as *Semien* that "made discovery in such cases nearly impossible to obtain" had been superseded by *Glenn* and that discovery outside the administrative record is permissible, although the court limited the additional discovery to the issue of bias. 2008 WL 5070434, at *1 (S.D. Ind. Nov. 26, 2008) (citing *Hogan–*

8

Court agrees with the analysis in *Baxter v. Sun Life Assur. Co. of Canada*, 713 F. Supp. 2d 766 (N.D. Ill. 2010). In that case, Judge Dow concluded that "for the Supreme Court's decision in *Glenn* to be meaningful, the conflict either must be an automatic strike against the insurer—which no court has found—or the parties must be allowed to explore, in at least a limited fashion, whether the conflict actually motivated the plan administrator's decision." *Id.* at 773 (citing *Glenn*, 554 U.S. at 117, 128 S. Ct. at 2351).

In the Court's view, the circumstances presented in this case give rise to a conflict of interest. Sciuckas was the sole member/shareholder of Fastmore when he set the Redemption Price for Van Bergen's UARs. He also was the sole manager of the Plan. He personally made all decisions about the valuation of Van Bergen's UARs and the other valuations Van Bergen identifies as potentially inconsistent with the valuation utilized in his case. Sciuckas, as the sole owner of Fastmore, benefited financially from denying Van Bergen any redemption value for his vested UARs. In the Court's discretion, limited discovery is warranted in this case either by application of the *Semien* factors or applying the considerations identified in *Glenn*. Van Bergen should be allowed to conduct limited discovery into Sciuckas's conflict of interest and whether that conflict impacted his decision when determining the Redemption Price for Van Bergen's UARs. That discovery is relevant and

---

*Cross v. Metro. Life Ins. Co.,* 568 F.Supp.2d 410, 414-16 (S.D.N.Y. 2008); *Winterbauer v. Life Ins. Co. of N. Am.,* 2008 WL 4643942, at *4-6 (E.D. Mo. Oct. 20, 2008)).

9

proportional to the needs of this case within the meaning of Federal Rule of Civil Procedure 26(b)(1).

In determining the scope of discovery to be permitted here, the Court, however, also is cognizant that the Seventh Circuit disfavors extensive discovery in ERISA cases because of the discretion afforded plan administrators and ERISA's goals of inexpensive and expeditious resolution of benefits disputes. In recognition of Seventh Circuit law, Van Bergen requests that he be allowed to take just two depositions – depositions of Raymond Sciuckas and Giedruius Madelis. Sciuckas owned 60% of Fastmore until the day before Van Bergen resigned, when he acquired the other 40% of the company from Madelis and became Fastmore's sole member/shareholder. Sciuckas was the Plan manager whose exercise of discretion Van Bergen challenges in this case. Sciuckas set the price for Madelis's equity interest in Fastmore and for Van Bergen's UAR rights.

The Court agrees Van Bergen should be allowed to take these two depositions. Therefore, Van Bergen will be allowed to depose Sciuckas about facts relevant to the structural conflict of interest and its effect, if any, on his valuation of Van Bergen's UARs at the time he resigned, the price paid for Madelis's 40% ownership interest in Fastmore the day before Van Bergen resigned, and the UAR award value for another Fastmore employee, Zac Socha, during roughly the same 2021 time period, and to question Madelis about the valuation and sale of his 40% ownership interest in Fastmore.

The scope of those depositions, however, will be limited. As discussed below, the Court is not persuaded that discovery should be permitted into the facts surrounding the Republic Partners so-called "valuation" of Fastmore or the sale of Fastmore that occurred more than a year after Van Bergen's UAR redemption request. In limiting discovery in this manner, the Court is attempting to balance the competing concerns at issue—a deferential standard of review in these types of ERISA claims and the need for some limited discovery of relevant information that is proportional to the needs of the case within the meaning of the Federal Rules of Civil Procedure.

With respect to the Socha UAR award, the Court agrees with Van Bergen and disagrees with Defendants that Van Bergen should be allowed to question Sciuckas about the factors that went into Sciuckas's valuations of Socha's UAR award. The temporal proximity of Sciuckas's valuations of the UAR redemption benefit for Van Bergen on May 1, 2021, and the UAR award made to Socha in January 2021 (initially) and then in June 2021 (as modified), albeit for somewhat different purposes (*i.e.* valuation of an UAR award versus redemption), makes this inquiry relevant for discovery purposes and proportional to the needs of the case. Whether the evidence ultimately will be admissible at trial or on summary judgment is a different question not germane to the Court's analysis here.

In arguing against discovery into the valuation of Socha's UARs, Defendants point out that Fastmore's Plan specifies that the Award Base Value for an award of UARs is "determined by the Manager in his sole discretion" and need not correspond

11

to the actual fair market value of the Company. Defendants' Opposition to Motion to Compel [ECF Nos. 73, 76], at 2 (citing [ECF No. 73-1], Ex A, Plan, at § 4(a) ("The Award Based Value need not correspond to the actual fair market value of the Company or a Unit thereof.")). The Plan defines "Unit" as "a common unit of the Company." [ECF No. 73-1], Ex A at § 2. By contrast, the Plan specifies that the Redemption Price of a UAR must be determined with reference to the growth in the value of the Company although that decision also rests in the manager's sole discretion. [ECF No. 73-1], Ex. A at 4(b) ("The Redemption Price to be paid to a Participant in exchange for the redemption of a Unit Appreciation Right shall equal the increase in value of a Unit over the Award Base Value from the date of the Award until the date of the most recent valuation of the Company Units."). That means, according to Defendants, that the factors that go into determining the Award Base Value for UARs when issued, and the considerations relevant to the exercise of the manager's discretion in that respect, conceivably can be different than the considerations that go into determining the Redemption Price for UARs, which is the central issue in Van Bergen's case.

For instance, as Defendants explain, the Award Base Value might take into consideration the skill level of the employees who are awarded UARs, different base compensations, and the employees' respective tenure with the company. Defendants' Opposition to Motion to Compel [ECF Nos. 73, 76], at 2-3. But the same goes for Sciuckas's decision to lower the Award Base Value for Socha's UAR award by $2,403 within months of the initial award. While Defendants argue the reduction in Socha's

UAR award valuation could increase the possibility that he would receive a monetary benefit upon an eventual future redemption of his UARs that does not necessarily resolve the question of whether Van Bergen should be able to probe the rationale for Sciuckas's decisions concerning the Socha UAR awards. The factors Sciuckas considered in connection with the $2,408 swing in the initial valuation of Socha's UAR award in January 2021 and his June 2021 revaluation of that award, which essentially temporally bracketed the May 2021 redemption valuation of Van Bergen's UARs, and whether Sciuckas's decisions were motivated by the theoretical analysis Defendants posit in opposing discovery into those matters or something else, may be relevant to Van Bergen's claim here. Exploration into those considerations is not unduly burdensome and is justified given the structural conflict present in the context of this case discussed above. Accordingly, the Court concludes that the Socha UAR award is a proper subject for Sciuckas's deposition.

    The Republic "valuation" of Fastmore, on the other hand, is not a proper subject for Sciuckas's deposition. According to Defendants, that was an unsolicited, and undated, marketing pitch by an investment bank presumably designed to induce Fastmore to hire Republic in connection with a potential sale of the company. Furthermore, the premise of the marketing pitch was the sale of the entire company, not a minority interest in a closely held company or an individual UAR unit of the company. In the Court's view, further inquiry into the Republic "valuation" (including, for example, a third-party deposition of Republic, if that is something Van Bergen contemplates though is not now requesting) would not uncover information

that is relevant or proportional to the needs of this case. However, because Madelis apparently was aware of the Republic "valuation" document, Van Bergen can inquire of Madelis at his deposition how, if at all, it factored into his decision to accept a lower price for his shares in the company than Van Bergen suggests the Republic "valuation" would justify.

The Court also is not convinced that it should allow Van Bergen to interrogate Sciuckas about the sale price he received for Fastmore in November 2022, more than a year after Van Bergen sought to redeem his UARs. Memorandum in Support of Plaintiff's Motion to Compel Discovery [ECF Nos. 67, 68], at 8. In the last paragraph of his reply brief, Van Bergen argues summarily that "the sale price Sciuckas received when he sold Fastmore in 2022 would depend heavily on Fastmore's valuation in 2021." Reply Memorandum [ECF No. 78], at 6. The accuracy of that unsupported statement is not obvious to the Court. The Court also is not convinced that the considerations that went into valuing the sale of a 100% controlling interest in a closely held corporation more than a year after Van Bergen's redemption of his UARs is relevant or proportional to the needs of the case given the discretion afforded the Plan manager in determining the Redemption Price of UARs and the relevant standard of review of that decision.

Finally, the Court is not persuaded by Van Bergen's alternative argument that he is entitled to even more discovery based on his Section 510 interference claim. In the Court's view, Van Bergen is not entitled to more discovery on his interference claim than what the Court is allowing as discussed above. Van Bergen does not allege

14

any action taken against him to prevent his ability to redeem his benefits other than Sciuckas's decision on the Redemption Price of his UARs (and the denial of the appeal of that determination). The Court agrees with Defendants that Van Bergen's Section 510 interference claim relies on the same conduct and seeks the same relief as his Section 502(a)(1)(B), and Van Bergen has not cited any case law in which additional discovery has been permitted in similar circumstances.

## CONCLUSION

For all these reasons, Plaintiff's Motion to Compel Discovery [ECF No. 64] is granted in part and denied in part. Plaintiff is entitled to some limited discovery as set forth above. The parties shall file a joint status report by February 5, 2024, that contains confirmed dates for the depositions of Messrs. Sciuckas and Madelis that the Court is allowing to proceed with this Order. Finally, Van Bergen asks the Court to award his attorney's fees incurred in bringing this Motion. The Court denies that request. Van Bergen was only partially successful on his Motion, and Defendants' opposition was substantially justified given the developing law in this area.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 22, 2024